**In re Anonymous No. 35 D.B. 76**

Disciplinary Board Docket no. 35 D.B. 76.

HARRINGTON, *Board Member,* October 3, 1977 — Pursuant to Rule 208(d) of the Pennsylvania Rules of Disciplinary Enforcement (rules), the Disciplinary Board of the Supreme Court of Pennsylvania (board) herewith submits its findings and recommendations to your honorable court with respect to the above petition for discipline.

## I.  HISTORY OF PROCEEDINGS

At the above number, a petition for discipline was filed by the office of disciplinary counsel naming

[ ], as respondent therein. In due course the matter was assigned to hearing committee [ ] comprised of [ ], Esquire and [ ], Esquire. [ ], Esquire, a member of hearing committee [ ] did not participate in this proceeding. The matter came before the hearing committee on March 9, 1977 at the office of the Disciplinary Board, [ ] Pennsylvania. Present at the hearing and representing the office of disciplinary counsel was [ ] Esquire, for petitioner. Respondent was present at all times during the hearing and although he appeared without counsel, respondent did testify under oath in his own behalf. Several stipulations were entered into, exhibits were offered, examined and admitted and witnesses were called on behalf of petitioner.

After the testimony was closed, the hearing committee reported its conclusion that respondent had violated the following Disciplinary Rules: D.R. 6-101(A)(3) (Neglect of a legal matter entrusted to him), and D.R. 1-102(A)(6) (Engaging in a course of conduct adversely reflecting on respondent's fitness to practice law).

Included in the hearing committee's report was the recommendation as follows:

"V—*RECOMMENDATION*

"In view of the past record of this Respondent and the present facts the hearing committee recommends in the interest of protection of the public that the Respondent [ ], be subjected to public censure by the Supreme Court as provided in Rule 17-4(c) of the Rules of Disciplinary Enforcement."

No objections were filed to the report and no briefs on exceptions were filed by either party.

The board adopts the findings and conclusions of the hearing committee and recommends to your

honorable court that respondent be administered public censure by the Supreme Court as provided in the rules.

## II. FINDINGS

The pertinent facts are contained in a "Stipulation of Facts" filed of record and received by the hearing committee as petitioner's Exhibit 1.

1. That respondent, Esquire, is an attorney who is admitted to the Bar of the Supreme Court of Pennsylvania and before the several courts of [ ] County.

2. That respondent, Esquire, has his office located at [ ] Street, [ ], [ ] County, Pennsylvania.

3. That on or about October 23, 1965, respondent prepared a will for [A] in which respondent was named executor.

4. That on or about November 27, 1965, [A] died, leaving an estate with real and personal assets.

5. That on or about December 29, 1965, the will of [A] was probated and letters testamentary were granted to respondent.

7. That, other than the division of joint checking accounts which the decedent had with two of her four children, no distribution of the assets of the estate was made to the heirs (decedent's four children) until August 20, 1976, when respondent forwarded to each heir a check for $250 plus a personal check for $150 to cover interest at the rate of six percent per year for ten years.

8. That the delay in distribution occurred for some ten years despite repeated demands by the heirs for settlement and distribution of the estate.

9. That on or about July 27, 1976, respondent

wrote to petitioner and advised "I plan to file my accounting in the estate within the next two weeks . . ." but said accounting has not yet been filed.

At the time of [A's] death, her heirs were minors whose distributive share of her estate could have been made to a guardian nominated by her in the will.

By the end of 1966, the real and personal property was sold and the proceeds deposited in a proper bank account. In March of 1973, some seven years later at the request of the heirs of the estate, the proceeds of two joint checking accounts were divided equally by respondent among the four heirs of the estate (N.T. 16, 17). Other than this distribution, no assets of the estate of [A] were distributed to the four heirs until August 20, 1976, when respondent forwarded to each heir a check for $250 and his personal check for $150 to cover interest at the rate of six percent per year for ten years (Petitioner's Exhibit 1 and N.T. 18).

When respondent appeared before the hearing committee and testified in his own behalf, he offered no satisfactory explanation for the delay in making distribution of the assets or filing the papers necessary to close the estate. Respondent brought his office file to the hearing. Despite his apparent lack of familiarity with the contents of that file, it did contain all or nearly all of the data necessary to complete the administration of the estate (N.T. 25, 26). The only complicating factor appeared to be the existence of one or more joint bank accounts in the name of the deceased and one of her surviving heirs. Respondent testified, "I, frankly, did not know how to cope with those" (N.T. 28). Even the presence of joint bank accounts should have presented no serious obstacle to re-

spondent, a Harvard Law School Graduate, who has been admitted to practice for more than 20 years and whose practice is now ". . . mostly estates and real estate" (N.T. 37).

In fact, respondent offered no satisfactory explanation for the delay in closing the estate nor is there one. He has admitted the truth of the allegations made against him. "I have no excuse" (N.T. 23). "I just never made a lot of these decisions I should have made" (N.T. 23). "I'm certainly ashamed of this thing; . . ." (N.T. 27). While respondent has offered no explanation for the delay in concluding his client's business, he has expressed concern for his own professional reputation in the community in which he lives. He was offended when attorney for petitioner called a bank employe as a witness. Respondent expressed his feelings as follows:

". . . I do want the record to show that I object to this method of presenting this information.

"This woman's husband is my boy's Scoutmaster. Her son is a friend of my son, and I know it is very difficult for her to be here, and it is entirely unnecessary.

"This could all have been done without embarrassing her in this way; or me.

". . . It was confidential until you brought her down here. It is not confidential any more. Everybody in the bank knows it. It's not confidential any more; I have already been disciplined" (N.T. 8).

Respondent's concern for his professional reputation would be more persuasive if it had been felt deeply enough to inspire him to complete the work necessary to close the estate in a timely manner. As late as ten years after the estate could have been closed, respondent wrote to petitioner, "I plan to file

my accounting in the estate within the next two weeks . . ." but no accounting was filed until fifteen days *after* he appeared before the hearing committee.

To respondent's credit, it is clear however that no financial loss has been suffered by the heirs of [A]. Each has received his distributive share of her estate with interest. At no time was there ever any hint of improper use of the funds by conversion, commingling or any other way by respondent. The accounts were always in order.

The petition contains but one charge of neglect and but one charge of neglect was considered by the hearing committee in arriving at its conclusions and recommendations. In most cases where severe discipline is imposed, it appears that more than one offense is recorded and complained of against respondent. The board considers public censure by the Supreme Court to be severe discipline. In this matter, the hearing committee's recommendations deal with a single charge. In an effort to avoid an appearance of inconsistency, it is important to note that respondent stipulated to the admission into evidence the records of two prior disciplinary proceedings in which he had been found to be in violation of D.R. 6-101(A)(3) and had received informal admonitions on March 15, 1974, and October 22, 1975. These violations involving as they do similar charges establish a pattern of conduct on the part of respondent toward his client that simply cannot be ignored. ". . . A rebuke in public before the Supreme Court of Pennsylvania is needed to induce respondent to be more responsible in the discharge of his professional obligations and to eschew such a neglect in the future." In the Matter of Anonymous, 43 D.B. 73 (Hearing Committee Report).

## RECOMMENDATION

This board recommends to your honorable court that respondent be subjected to public censure by the Supreme Court as provided in the appropriate rules.

## ORDER

EAGEN, *C.J.*,—And now, October 18, 1977, the report and recommendations of the Disciplinary Board dated October 3, 1977, are accepted; and it is ordered and decreed, that said respondent of [   ] County, be subjected to public censure by the Supreme Court, as provided in Rule 204(3) of the Rules of Disciplinary Enforcement, at the session of this court commencing November 14, 1977, at Philadelphia.

Mr. Justice Roberts and Mr. Justice Nix dissent and conclude that some period of suspension should be imposed.